J-S11002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: C.J.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.L.E., MOTHER | No. 1797 MDA 2014 |

Appeal from the Order entered September 25, 2014
in the Court of Common Pleas of York County
Orphans' Court, at No(s): 2014-0056a

| | |
|---|---|
| IN THE INTEREST OF: C.J.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.L.E., MOTHER | No. 1875 MDA 2014 |

Appeal from the Order entered September 25, 2014
in the Court of Common Pleas of York County
Juvenile Court, at No(s): CP-67-DP-0000047-2013

BEFORE: PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 24, 2015**

K.L.E. ("Mother") appeals from the order changing the permanency goal for her female child, C.J.B. ("Child"), who was ten and a half years old, from reunification to adoption pursuant to Section 6351 of the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6364, and from the order terminating her parental rights to Child pursuant to Sections 2511(a)(1), (5), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2910. We affirm.[1]

Mother of Child resides in York County; Father resides in Ogden, Utah. **See** Trial Court Opinion, 11/6/14, at 1.

---

[1] C.B. ("Father") consented to the termination of his parental rights and the change of goal to adoption of Child, and is not a party to this appeal.

The York County Office of Children, Youth, and Families ("CYF") received the most recent referral for the family on January 26, 2013. CYF filed a Dependency Petition on February 21, 2013, based on the allegation that Mother physically abused Child. *See id*. at 1-2. Child denied that Mother caused the bruising, and the referral was deemed unfounded. Mother had also been involuntary committed for allegedly making homicidal statements against her paramour who then recanted the accusation, and Mother was released from the hospital. Allegations were also made that Mother was pregnant with her seventh child and using drugs. The whereabouts of Father were unknown at the time. *See id*. at 2.

On March 12, 2013, the trial court entered an order adjudicating Child dependent and awarding legal custody of Child to CYF and physical custody of Child to foster parents, and the goal of return to the parent or guardian was established. On April 25, 2013, CYF filed a Motion for Finding of Aggravated circumstances against Mother. In an order dated May 16, 2013, the trial court found that clear and convincing evidence existed as to the basis of the aggravated circumstances, which were found as a consequence of prior involuntary termination of other children. No efforts were made to preserve the family and reunify Child with Mother. *See id*. On May 16, 2013, the trial court entered an order affirming the prior adjudication of dependency, and awarding legal custody of Child to CYF, and awarding physical custody of Child to the foster parents.

CYF filed a Petition for Involuntary Termination of Parental Rights of Mother and a Petition to Change the Goal to Adoption on April 12, 2014. The trial court held a hearing on September 25, 2014. Mother did not appear at the hearing.

By the time of the termination hearing, four Family Service Plans ("FSPs") had been prepared for the family. The dates of the FSP's were as follows: April 11, 2013, October 11, 2013, March 28, 2014, and August 26, 2014. The FSPs were forwarded to Mother in a timely manner. *See* N.T., 9/25/15, at 19-20. Mother never objected to any of the goals established for her in any of the plans. *See id*. at 20. The goals for Mother were very limited because the trial court had previously directed that no services were required to be sent for the benefit of Mother due to the finding of aggravated circumstances. Mother's FSP's were evaluated on a consistent and timely basis.

Evidence presented at the hearing revealed that Mother had been incarcerated from May 2, 2013, until September 13, 2013, due to outstanding bench warrants from unresolved criminal charges in 2010. *See id*. at 20-21. Mother is currently under the supervision of the York County Probation and Parole Office and appears to be in compliance with the terms and conditions of her probation or parole since no additional bench warrants have been issued. Mother's supervision is due to charges of possession of a controlled substance, possession of drug paraphernalia, and driving under

the influence. *See id*. 20-22. Evidence also revealed that Mother completed the White Deer Run Program, a drug and alcohol inpatient program. Mother, however, continued to use drugs after completing the program.

Since the adjudication of dependency, Mother reported being at four different locations, including York County Prison and the White Deer Run Program. *See id*. at 23. Mother has not been employed and has not actively looked for a job. Mother's paramour supports her. *See id*. at 24.

Evidence presented at the hearing revealed that Mother has been fairly consistent in visiting Child; however, Mother's visits with Child have never progressed to the point of being unsupervised. *See id*. at 24-27. In addition, Child never requested an increase in visits with Mother. Child did request to have fewer visits, and Child never contacted Mother outside of the regularly scheduled visits. *See id*. at 27. Child also becomes upset when she suspects that Mother is using drugs. *See id*. at 28.

Evidence also revealed that Child has resided with her foster parents for over seven years and is well bonded to them. In fact, the original placement with the foster family occurred when Mother indicated that she wanted the foster parents to have custody of Child. *See id*. at 28-29. Child is comfortable with her foster family, and she looks to them to satisfy her needs and for guidance in her life. *See id*. at 28-30. The bond that Child has with Mother is more of an acquaintance bond. *See id*. at 30. The bond

between Child and her foster parents is much stronger than the bond between Mother and Child.  **See id**. at 30-31.

The trial court also reviewed evidence at the hearing which showed that Mother completed a drug and alcohol evaluation in December 2013, in which it was determined that she met the criteria for substance abuse disorder, and Mother was recommended for outpatient drug and alcohol treatment.  Mother participated in treatment.  Her progress was determined to be slow, and she remained categorized as in the early stages of treatment.  Moreover, in spite of Mother's extensive mental health issues, CYF never received any mental health evaluations despite numerous requests.

Evidence presented at the hearing revealed that Mother had been drug tested by Families United Network since September 2013.  Mother was drug tested on thirty occasions and tested for nonprescription drugs on four occasions as of August 5, 2014.  Mother was unavailable and could not be tested for drugs on twenty-nine occasions.  **See id**. at 35.

Child is doing well in her current placement, and she has no special needs or concerns.  A pre-adoptive resource has been identified for Child.

On September 25, 2014, the trial court issued orders involuntarily terminating Mother's parental rights to Child and changing Child's permanency goals to adoption.  These timely appeals followed, which we consolidated *sua sponte*.

Initially, we review the termination decree according to the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 614 Pa. 275, 284, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id*.; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Applying this process to the case at bar, we first will look at the termination of Mother's rights to Child under Section 2511(a). The trial court terminated Mother's rights pursuant to (a)(1) and (5). This Court need only agree with the trial court's decision as to any *one* subsection of Section 2511(a) in order to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will therefore examine the facts under Section 2511(a)(5), which provides:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

…

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

…

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Thus, pursuant to subsection (a)(5), CYF has the burden to prove (1) Child was removed from the care of the parent by the trial court for at least six months, (2) the conditions which led to Child's removal continue to exist, (3) the parent cannot or will not remedy those conditions within a

- 8 -

reasonable period of time, (4) the services or assistance reasonably available are not likely to remedy the conditions which led to the removal or placement within a reasonable period of time, and (5) termination of the parent's rights would best serve the needs and welfare of Child. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1273-74 (Pa. Super. 2003).

Examining the first element, it is uncontested that Child has been removed from Mother's care since January 26, 2013. Child has no contact with Mother. As such, the first requirement for termination under subsection (a)(5) is met.

With respect to the second prong, the trial court determined that Mother was dependent on drugs, and that her primary drug choice was heroin. Families United Network was engaged for the purpose of drug testing Mother. Mother was incarcerated from May to September 2013 for drug possession and her second DUI, and Mother was in drug rehabilitation from October to November 2013. Mother was tested for drugs thirty times and tested positive for nonprescription drugs on October 3, 2013, March 18, 2014, March 28, 2014, and August 6, 2014. Similarly, on twenty-nine occasions, Mother was not available for testing and did not call the testing agency in order to reschedule.

Mother had a job for a short period of time, but was unable to maintain the position. Mother has no income, and her paramour provides her with transportation, food and housing, but not in his home. Paramour

has indicated that he will not be continuing to do so. In addition, Mother delivered a new child in January 2013, who is also the subject of a dependency action.

Child has been with the foster parents for a period in excess of eighteen months as a result of the current dependency action. Child is ten years old, and the foster parents have been Child's caregivers on and off for most of her life. She attends a private Mennonite school, and has no special needs. Child is doing well in the foster parents' home, and calls her foster parents "mother" and "father." Child is bonded with her foster parents.

Evidence presented at the hearing revealed that Mother has exercised supervised visitation of Child thirteen times between the adjudication in March 2013 and the end of the year. In addition, Mother has exercised supervised visitation of Child twenty-four times between January and September 2014. Mother's visitation of Child was never suspended, always supervised, and never progressed beyond the point of being supervised during the entire period of adjudication. Child has asked for less visitation with Mother, and has never contacted Mother. Evidence revealed that Child would become upset when she would notice Mother's drug use or instability. Child did not have a healthy bond with Mother.

After a review of all of the evidence, the trial court correctly determined that it does not appear that Mother is likely to remedy the conditions which necessitated the dependency, as Mother has not done so

during the eighteen months that Child has been in foster care. Approximately one month before the change of goal hearing, Mother had used drugs again. Mother still had no employment, and her housing was dependent upon her paramour, whose patience was at an end. When given the opportunity to present her views in the matter, Mother chose not to appear at the hearing.

Finally, the trial court reasonably found that the termination of parental rights of Mother will serve the needs and welfare of Child. Child needs structure and finality to her relationships. As the bond between Mother and Child is not significant, termination of Mother's parental rights would serve the needs and welfare of Child.

Thus, there is sufficient, competent, clear and convincing evidence in the record to support the trial court's conclusions with regard to section 2511 (a)(5).

Mother also challenges the sufficiency of the evidence to support the termination of her parental rights under Section 2511(b). A Section 2511(b) analysis includes the consideration of love, comfort, security and stability, as well as the effect on the child of permanently severing the bond with the parent. **See In re C.P.**, 901 A.2d 516, 520 (Pa. Super. 2006). **See also In the Matter of the Adoption of A.M.B.**, 812 A.2d 659, 675 (Pa. Super. 2002) (reaffirming that child's life, happiness, and vitality cannot be put on hold until parent finds it convenient to perform parental duties). "The court

must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008) (citation omitted). This Court has observed that, where the child has been in foster care for most of the child's life, and the resulting bond is attenuated, no bond worth preserving is formed between a child and a natural parent. *See id*. at 764. This Court has also held that the trial court is not required by statute or precedent to order that a formal bonding evaluation be performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

Beyond that stated above, the panel in the decision in *In re K.Z.S.* emphasized that, in addition to a bonding examination, the court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security and stability the child might have with the foster parents. Moreover, we have stated that the court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child. *See id*. at 763.

Mother does not have a strong bond with the Child. On the other hand, the evidence reveals that the Child has a strong emotional bond with her foster parents, who take care of all of her needs. The trial court

determined that there is no evidence that Child would be adversely affected if her relationship with Mother is severed.

The competent evidence in the record shows Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d at 534. She did not put herself in a position to assume daily parenting responsibilities so that she could develop a real bond with Child. *See In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

Although Mother may love Child and desire an opportunity to serve as her mother, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); N.T., 7/12/13, at 59. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

Mother also challenges the trial court's change of goal for the Child to adoption under Section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, and

55 Pa.Code § 3130.74. Mother argues that CYF failed to make reasonable efforts to reunite her with Child.

Section 6351(e) of the Juvenile Act provides in pertinent part:

**(e) Permanency hearings.—**

(1) [t]he court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

…

42 Pa.C.S.A. § 6351(e).

Regarding permanency, Section 6351(f) and (f.1), and (g) provide:

**(f) Matters to be determined at permanency hearing.—** At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

- 14 -

**(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.**

(6) Whether the child is safe.

…

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

   (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

   (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

   (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

…

**(f.1) Additional determination. —** Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

   (1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and wiling relative.

**(f.2) Evidence. –** Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order.—** On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

…

42 Pa.C.S.A. § 6351 (emphasis added).

In a change of goal proceeding under the Juvenile Act, 42 Pa.C.S.A. § 6351, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. *See In re A.K.*, 936 A.2d 528, 532-534 (Pa. Super. 2007).

Here, the trial court found, by clear and convincing evidence, that CYF met its statutory burden, and that it was in the best interest of Child to terminate Mother's parental rights and change her permanency goal to adoption.

The trial court reasoned that the testimony established that the change in goal would best serve the Child's safety, protection, mental, physical, and moral welfare, so that Child may be adopted, and Child may become a permanent part of a family. Although Mother claims to wish to be reunited with Child, her actions demonstrate otherwise. Due to Mother's lack of employment or income, the insecurity regarding her housing, and her inability to stop her drug use, the trial court concluded that it is unlikely that Mother would be successfully reunited with Child.

After a careful review of the record in this matter, we find that there is competent, clear and convincing evidence in the record to support the trial court's finding that a change in the permanency goal to adoption is in the

Child's best interests.  *See R.J.T.*, 9 A.3d at 1185 n.7, 1190-91.  *See also In re A.K.*, 936 A.2d at 532-534.

Accordingly, we affirm the trial court's order terminating Mother's parental rights to the Child, and the order changing the permanency goal to adoption.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015